IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEE VANG,

                Petitioner,

v.

LIZZIE TEGELS,

                Respondent.

OPINION and ORDER

19-cv-544-wmc

---

Petitioner Lee Vang brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2015 conviction for second-degree sexual assault, victim intimidation, battery, bail jumping, and disorderly conduct. Vang contends that the conviction should be vacated because his counsel failed to object to improper testimony on three occasions during his jury trial in Milwaukee Circuit Court. As explained below, Vang's petition will be denied because two of his claims are procedurally defaulted, and the third was reasonably adjudicated by the Wisconsin Court of Appeals.

BACKGROUND[1]

**A. Criminal convictions**

The charges against Vang arose out of three events in Milwaukee County in late 2013 and 2014. The first of these (Case No. 2014CM23) occurred in December 2013, when Vang threatened police and multiple family members after his wife reported domestic violence to the police. The second (Case No. 2014CF2539) occurred in June 2014, when Vang battered and

---

[1] The following facts are taken from Vang's petition and the state court records provided by Vang and the state.

sexually assaulted his wife. The six counts in those two cases were set for jury trial in October 2014, but Vang failed to appear. This resulted in new bail-jumping charges (Case No. 2014CF5489) being filed against him; that case was later consolidated with the first two cases, and Vang proceeded to a 4-day jury trial on all charges in May 2015.

At trial, the state called several witnesses. To begin, a police officer testified that on December 27, 2013, at about 2:00 a.m., he had been dispatched to transport a domestic violence victim, Vang's wife ("J"), to a safe place. The officer testified that Vang arrived, seemingly intoxicated and threatening his wife, and that J. appeared to be afraid of Vang.

Next, J. testified, describing the December 2013 incident and stating that she had been so afraid of going into the house with Vang that she had instead run two and a half blocks to the nearby police station for help. Vang had then arrived angry, demanding that she leave with him. J. subsequently moved out of state with the couple's five children. However, J. later returned and moved back in with Vang, explaining she had no other choice for housing. J. also described the June 14, 2014 incident, stating that Vang and she had been attending a friends' housewarming party, where he had consumed several drinks. When they returned home, Vang became aggressive and demanded sex. After she told him no, Vang became angry, complained of her having a boyfriend, and grabbed her phone, throwing it against the wall and breaking it. J. testified she then tried to leave, but Vang threw her on the bed, punched her in the thigh, and threatened to tie her up in the basement and kill her if she called the police. Vang then punched her in the face, put his hands around her neck, and forced her to have sex out of fear that he would continue to beat her if she refused. The following day, J. went to the police station to file an additional report against Vang.

The state also called Police Officer Darryl Anderson, who testified about the statements J. made to him after contacting the police, including a description of the sexual and physical assault. Anderson further testified that he observed swelling on J.'s right cheek bone, and described her as "very sad," "sobbing," "trembling" and "scared." Finally, he testified that J. told him that her family had "disowned" her, because "They were tired of her sticking around and being with someone who was abusive to her."[2]

Vang called three witnesses in his defense. The first two -- Vang's nephew and his nephew's girlfriend -- were present at the friends' housewarming party where Vang and J. had been present on June 14, 2014. The final witness was Vang himself. Regarding the events that occurred after his encounter with police in December 2013, Vang testified, "I can't really remember that day. I was really drunk." Describing the events of June 14, 2014, however, he denied J.'s accusations of assault and rape. Vang testified that his nephew and he had actually left the housewarming party at around 10:00 p.m. to attend a "car meet, which is—I know it's called an illegal street race." When defense counsel asked Vang to clarify, he testified that it involved three or four people racing for money, which was "part of" how he supported himself. On cross-examination, Vang acknowledged that the race was illegal because "we go race at abandoned buildings where there's no rules . . . no law in it. I mean, it's basically like we're hiding it, so it's illegal." Finally, regarding the bail jumping charges, Vang testified that he knew that he had a jury trial scheduled, but that instead of going to court, he went to Minnesota because he wanted to see his kids. However, Vang testified that when later learning

---

[2] The state also called five witnesses who testified about the events of December 2013, as well as witnesses who testified about the bail jumping charges, although this testimony is immaterial to Vang's habeas petition.

3

from his nephew that a warrant was out for his arrest, he immediately turned himself in to the police. On cross-examination, Vang answered in the affirmative when the prosecutor asked Vang whether his nephew had learned about the warrant because the information had been on a Fox 6 News series called "Wisconsin's Most Wanted."

Ultimately, the jury found Vang guilty on all counts, and he was sentenced to 18 years and 3 months of imprisonment, with 10 years of extended supervision.

**B. Postconviction and appellate proceedings**

Vang filed a postconviction motion in state court contending that his trial counsel was ineffective for failing to object at trial to: (1) Officer Anderson's hearsay testimony, repeating statements that J. made to him about the June 2014 assault; (2) Vang's own testimony, elicited on direct examination, about participating in what he described as "an illegal street race" for money; and (3) the state's question of Vang on cross-examination regarding his knowledge that his failure to appear at his originally scheduled 2014 trial had been the subject of a local news segment of "Wisconsin's Most Wanted." The circuit court denied Vang's postconviction motion without an evidentiary hearing.

Vang appealed, raising the same three claims of ineffective assistance of trial counsel asserted in his postconviction motion to the circuit court. However, the Wisconsin Court of Appeals affirmed, concluding that the circuit court properly rejected each of Vang's ineffective assistance claims. Finally, Vang filed a petition for review of the appellate court's opinion, this time raising only one issue: that the court erred in rejecting Vang's ineffective assistance claim based on his trial counsel's failure to object to Officer Anderson's hearsay testimony regarding

4

statements by Vang's victim, his wife J. (Dkt. #11-6.) After the Wisconsin Supreme Court denied his petition for review, Vang filed this July 2019 habeas petition in this court.

ANALYSIS

Petitioner Vang contends that his conviction should be vacated based on the same three ineffective assistance of counsel claims that he raised in his postconviction motion and direct appeal. As a preliminary matter, Vang's second and third ineffective assistance of counsel claims were procedurally defaulted because he failed to include them in his petition for review submitted to the Wisconsin Supreme Court. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Wilson v. Cromwell*, 69 F.4th 410, 420 (7th Cir. 2023) (petitioner must present operative facts and legal principles that control each claim to *each level* of state court review, including petitions for discretionary review). While Vang argues that he *did* raise an ineffective assistance of counsel claim with the Wisconsin Supreme Court in his petition for review, his petition expressly challenged *only* the Wisconsin Court of Appeals' reasoning with regard to his claim that trial counsel failed to object to Officer Anderson's hearsay testimony. (Pet. for Review (dkt. #11-6) 3 (identifying single issue for review)). Although this claim challenged the effectiveness of trial counsel, a petitioner must present each claimed deficiency of counsel through a complete round of state court review to preserve the claim for federal habeas review. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (petitioner procedurally defaults individual, claimed deficiencies of counsel if he does not fairly present them to each level of the state courts, even if he presented an ineffective-assistance claim based on other deficiencies before a lower court.)

5

Where, as here, a petitioner's claims are procedurally defaulted, habeas review is precluded *unless* the prisoner demonstrates either: (1) cause for and prejudice stemming from that default; or (2) a denial of relief would result in a miscarriage of justice. *Wilson*, 69 F.4th at 421. Notably, "the miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Id.* (citations omitted). Vang neither asserts cause and prejudice, nor does he develop any argument or submit any evidence to support an actual innocence exception. Moreover, the court can find no basis to argue for either exception on this record. Accordingly, Vang cannot overcome his procedural default of the second and third ineffective assistance claims, and the court will not address them further in this opinion.

As for Vang's remaining preserved claim, ineffective assistance of counsel is analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a petitioner must demonstrate both constitutionally deficient performance by counsel *and* actual prejudice as a result of the alleged deficiency. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000). To demonstrate deficient performance, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. To demonstrate actual prejudice requires a petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In addition, because the Wisconsin Court of Appeals addressed the merits of Vang's ineffective assistance of counsel claims, this court's review is subject to a particularly deferential standard of review under 28 U.S.C. § 2254(d)(1). Specifically, Vang is also not entitled to relief unless he shows that the state court decision was "contrary to, or involved an

6

unreasonable application of, clearly established Federal law, as determined by the Supreme Court." A decision is *contrary to* clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases." *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (citations omitted). A decision involves an *unreasonable application of* Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Id.* Alternatively, Vang can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Again, however, the federal court owes deference to the state court, especially the underlying state court findings of fact and credibility determinations against a petitioner, which are all presumed correct unless the petitioner produces "clear and convincing" evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

Thus, to prevail on an ineffective assistance of counsel claim under § 2254(d), a petitioner must overcome what has been referred to as a "doubly deferential" form of review, which essentially asks, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 89 (2011). This means that only a clear error in applying *Strickland* will support a writ of habeas corpus. *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009), and this federal court must deny relief so long as the Wisconsin Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (citation omitted).

7

Vang argues that it was clear error for the Wisconsin Court of Appeals to reject his claim of deficient performance based on his trial attorney failing to object to hearsay testimony offered by Officer Anderson, recounting his wife's statements about the June 2014 sexual incident, as well as her statements about what family members had said regarding Vang. Further, Vang argues, failing to object to Officer Anderson's testimony allowed the government to bolster improperly the victim's testimony by repeating her version of events in a more organized way and by painting him as a repeat abuser. In evaluating this claim, the Wisconsin Court of Appeals applied the correct federal legal standard, relying on the Supreme Court's decision in *Strickland*, as well as Wisconsin state court cases applying *Strickland*. (Dkt. #11-5, at 10–11.) Generally, the court of appeals concluded that Vang's claim failed because he had not shown prejudice by his counsel's failure to object to Officer Anderson's testimony. In particular, the court noted that the victim herself had already provided "extensive and detailed testimony," which had already been corroborated by non-hearsay, admissible evidence, including: (1) the unrebutted testimony by the police officer present during the December 2013 incident describing Vang's belligerent behavior and the victim's apparent fear of him; (2) the testimony of Officer Anderson about his observations of the victim's injuries and her demeanor on June 15, 2014; and (3) the photographs of the victim's injuries. (*Id.* at 12.) The court also noted that, in denying Vang's postconviction motion, the trial judge who had presided over Vang's trial found the victim's testimony "completely credible." (*Id.*) Thus, regardless whether trial counsel succeeded in objecting to and excluding the hearsay portions of Officer Anderson's testimony, there was no reasonable likelihood that the jury's decision would be different. (*Id.* at 11–12.)

8

Because the Wisconsin Court of Appeals' analysis was based on a reasonable application of federal law, Vang has identified no basis on which this court could conclude that rejection of Vang's ineffective assistance claim fell "well outside" the boundaries of permissible differences of opinion.  *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (federal court cannot grant habeas relief unless state court decision was "'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion").

In addition, Vang argues that it was inappropriate for the court of appeals to rely on the trial judge's credibility assessment of the victim, but this was only one aspect of its *Strickland* analysis, and that reliance was also not improper.  *See Raygoza v. Hulick*, 474 F.3d 958, 964 (7th Cir. 2007) ("Nor is it improper to consider the credibility assessment of a judge who presided over the criminal trial."); *see also Hinesley v. Knight*, 837 F.3d 721, 735 (7th Cir. 2016) (discussing trial judge's credibility assessment in determining that counsel's failure to object to hearsay evidence was not ineffective).  Moreover, this court agrees with the Wisconsin Court of Appeals that the hearsay evidence merely conformed to the already substantial evidence supporting the victim's testimony and Vang's guilt.

The only remaining question on habeas review is whether to grant Vang a certificate of appealability.  Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller El v. Cockrell*, 537 U.S.

9

322, 336 (2003) (internal quotations and citations omitted). Here, Vang has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because this court finds that no reasonable jurists would debate whether the Wisconsin Court of Appeals' decision unreasonably applied clearly established federal law, or based its decision on an unreasonable interpretation of the facts, the court will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Lee Vang's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2. Vang is DENIED a certificate of appealability.

Entered this 4th day of January, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge